23 CV 02578

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **"Sikhs For Justice" (SFJ),** an advocacy Group[1] working for Sikh Peoples' Right to Self Determination through Khalistan Referendum and to whom the class members have submitted the details of torture & abuse. | Civ. No._____ |
| **Singh & Kaur;** Pro Khalistan Sikh males and females in Punjab, India On their own behalf and own behalf and on Behalf of class members[2] On behalf of similarly situated class members | |
| | **CIVIL COMPLAINT** FOR *TORTURE, CRUEL AND INHUMANE TREATMENT* |
| **Plaintiffs,** | |
| **BHAGWANT MANN** An individual and citizen of India State Convenor of the Aam Aadmi Party (AAP) in Punjab Chief Minister of the State of Punjab, India | **CLASS ACTION** |
| **BANWARILAL PUROHIT** An individual and citizen of India Member of the Bharatiya Janata Party (BJP) Governor of the State of Punjab, India | |
| **Gaurav Yadav** An individual and citizen of India Member of Indian Police Service (IPS) Director General of Police (DGP), Punjab, India | **JURY TRIAL DEMANDED** |
| **Defendants** | |

The Plaintiffs, allege the following:

## I.  PRELIMINARY STATEMENT

1.  This action is brought in the wake of ongoing severe and violent "Siege of Punjab" in India where thousands of Sikh families have been illegally detained, subjected to

---

[1] "Sikhs for Justice" (SFJ) (www.SikhsForJustice.org) is a New York based Pro Khalistan advocacy group working on the mission of realizing Sikh peoples' right to self-determination and independence of Indian Punjab through the means of Referendum. The voting in SFJ's Khalistan Referendum started on October 31st from London, UK and so far more than 750,000 Sikhs have voted in the unofficial referendum voting held in several cities of UK, Geneva Switzerland, Milan and Rome in Italy, Brampton and Mississauga in Canada and Melbourne & Brisbane in Australia.

[2] The named plaintiffs are direct victims of the actions of the Defendants. The plaintiffs are based in India and their full names have been withheld due to fear of reprisal from the Indian authorities

custodial torture while the whole state of Punjab has been cut and isolated from the rest of the world with shut down of internet[3] to blackout the information about ongoing human rights abuses and to carry on the persecution[4] of the Sikh population with impunity on account of their subscription to socio-religious campaign - "Khalsa Vaheer" – run by the "Waris Punjab De" (WPD) under the leadership of Sikh preacher Amritpal Singh and for their support to the political opinion "Khalistan Referendum" being organized by the plaintiff Sikhs For Justice (SFJ) on the question "Should Indian Governed Punjab Be An Independent Country?".

2.  The ongoing "Siege of Punjab" started about three weeks ago with Operation CASO (Cordon And Search Operations)[5] ordered by the defendant Bhagwant Mann, the Chief Minister of Punjab and Banwarilal Purohit[6], Governor of Punjab and executed by the Defendant Gaurav Yadav, Director General of Police, against Khalistan Referendum in Punjab under which homes of thousands of Khalistan Referendum campaigners have been raided, hundreds have been illegally detained, subjected to custodial tortures, their mobile phones confiscated and threats of rape, violence and death given to their family members. The launch of CASO against SFJ and Khalistan Referendum is verified by the police officials as reported in Tribune India, dated March 02, 2023, saying:

> *"Acting on a tip-off, the district police today conducted a cordon and search operation to nab sympathisers of the Sikh For Justice (SFJ) of Gurpatwant Singh Pannu at Jassran village adjoining the industrial town of Mandi Gobindgarh. The police searched the houses of two*

---

[3] https://www.scmp.com/week-asia/politics/article/3214481/anger-mounts-among-sikh-diaspora-indian-police-cut-internet-search-fugitive-separatist-preacher

[4] https://time.com/6265630/india-amritpal-singh-sikh-punjab-khalistan/

[5] https://www.tribuneindia.com/news/patiala/police-campaign-to-nab-sfj-supporters-drug-peddlers-484764

[6] Defendant Purohit, the Governor of Punjab, asking the state police to crush the movement for Khalistan and supporters of Khalistan Referendum. https://www.hindustantimes.com/cities/chandigarh-news/thwart-efforts-to-revive-khalistan-movement-in-punjab-guv-to-cops-101675362297995-amp.html

*erstwhile supporters of the SFJ. Nothing incriminating was found.*

*While addressing the media, Amloh DSP Jangeet Singh said the Punjab Police launched a CASO (cordon and search operation) campaign to nab anti-nationals, drug peddlers, gangsters and criminals. The campaign also aims at making the state drug-free. He said through the campaign, thorough search operations were conducted at suspicious places*".[7]

3.  Khalistan Referendum[8] is the campaign of SFJ under which first ever global unofficial referendum is being organized among the Sikh living outside India and people of all faiths living in Punjab on the question of secession of Punjab from India and establishment of a sovereign country Khalistan. Since June Indian Army's Operation Bluestar against the Golden Temple in June 1984, the aspiration for liberation of Punjab from India has become central and existential among the Sikh people globally, popularly known as Khalistan movement[9]. The movement which during the 80s and 90s was violently crushed by the Indian government by extra judicially  more than 150,000 Sikhs with complete impunity, has now morphed into and taken the shape of "Khalistan Referendum" an unofficial voting being conducted under the supervision of a panel of international experts on elections and democracy – The Punjab Referendum Commission – www.PunajbReferendumCommission.org to ensure the transparency and compliance with international standards.

---

[7] https://www.tribuneindia.com/news/patiala/police-campaign-to-nab-sfj-supporters-drug-peddlers-484764

[8] https://www.independent.co.uk/asia/india/canada-khalistan-referendum-india-sikhs-b2173723.html

[9] https://amp.cnn.com/cnn/2023/03/22/india/india-separatist-khalistan-movement-explainer-intl-hnk/index.html

4. For the last 10 days[10], a fresh wave of violence has been ordered by the defendants Mann and Purohit and executed by Defendant Yadav against the supporters and sympathizers of socio-religious campaign Khalsa Vaheer. Their home were raided, scores illegally detained and tortured, while the blackout on the flow of information further tightened.



5. Khalisa Vaheer is a socio-religious campaign of WPD under which Sikh preacher Amritpal Singh[11] spreads the teachings of Sikhism with special emphasis on the evils of drug use. For over a decade drug addiction has become a concerning endemic in Punjab and hence Khalsa Vaheer's message became quickly popular.

---

[10] https://www.punjabnewsexpress.com/punjab/news/punjab-police-launch-crackdown-against-elements-of-waris-punjab-de-amritpal-singh-absconding-203307

[11] https://www.abc.net.au/news/2023-03-24/amritpal-singh-on-the-run-from-indian-authorities/102123216

Punjab State Police personnel engaged in search operation for the Pro-Khalistani preacher Amritpal Singh at the Ambala – Patiala border in Punjab on March 21, 2023. | Photo Credit: R.V. Moorthy

After it launched a crackdown on March 18 against Amritpal Singh, a pro-Khalistan (sovereign State for Sikhs) propagator, the Punjab Police on Sunday said that 197 persons out of a total of 353 persons arrested under preventive sections of law, have been released so far.

Director General of Police (DGP) Punjab Gaurav Yadav said that directions had been issued to ensure that no innocent person was harassed or arrested. The investigating officers and their supervisory officers should first examine the available evidence and satisfy themselves before undertaking any preventive arrest or apprehension in

6. Colonial era draconian laws of sedition, National Security Act (NSA)[12] and Unlawful Activities (Prevention) Act (UAPA) all of which authorize arbitrary arrests and detention, are being widely used to suppress the supporters of Khalsa Vaheer and Khalistan Referendum campaigns[13].

7. Punjab with a population of over 27 million majority of whom are Sikhs, is being rounded and hounded on the orders of and by the forces controlled and commanded by the defendants to persecute the named plaintiffs, the class members, and the general Sikh population of Punjab on account of supporting socio-religious campaign "Khalsa Vaheer" and subscribing to the political opinion "Khalistan Referendum".

---

[12] https://www.thehindu.com/news/national/other-states/amritpal-case-police-says-197-released-so-far-7-detained-under-nsa/article66664927.ece

[13] https://indianexpress.com/article/cities/chandigarh/amritpal-singh-aides-detained-nsa-social-media-influencer-furniture-store-owner-8509089/



Advertisement

**India cuts internet to 27 million as Punjab police hunt Sikh separatist**

By Rhea Mogul, CNN
Updated 9:56 PM EDT, Mon March 20, 2023

Amritpal Singh's supporters in Mohali, India, on March 19, 2023.

https://www.cnn.com/cnn-underscored/home/best-amazon-products-big-difference-outbrain/obCriqUrl=true

8. From the actions and policies of the defendants, it becomes abundantly clear that the real intent and motive behind the "Siege of Punjab" and taking the Sikh population as "hostage" is to punish and penalize the people of Punjab for supporting and subscribing to the socio-political campaign Khalsa Vaheer and political opinion Khalistan and its democratic expression "Khalistan Referendum".

9. The Plaintiffs are those who either personally suffered or had immediate family members suffered detention, torture and death threats as a result of the "Siege of Punjab" ordered and executed by the Defendants.

10. The named Plaintiff SINGH, filing under assumed name due to fear of retaliation, is a Sikh male, a Lawful Permanent Resident of the United States originally hailing from the District Ludhiana, Punjab.

11. On or about March 12, 2023 when he plaintiff Singh was on a visit to India, the plaintiff was illegally detained during the Operations ordered by the Defendants. as part of widespread raids and round up of Sikhs throughout Punjab. Singh was illegally detained by the Punjab Police acting directly under the command of Defendant Yadav. The plaintiff Singh was illegally detained for 3 days, subjected to custodial torture in the form

6

of beating, deprived of food and sleep, and threats of being extra judicially killed. The plaintiff Singh was repeatedly told by the custodial police officials that his arrest is according to the orders and policy of Punjab Chief Minister Mann and Governor Purohit under which any Sikh who supports Khalistan Referendum should be captured and "taught a lesson" and that Singh is being "straightened" because his US Citizen son living in Chiaco, IL with whom Singh lives in the US, actively supports "Khalistan Referendum" on the social media and on ground rallies/events in the United States. After securing his release from illegal detention, the plaintiff Singh returned to the United States 2 days ago.

12. The named Plaintiff KAUR, filing under assumed name due to fear of retaliation, is a Sikh female, Citizen of the United States originally hailing from the District Patiala, Punjab.

13. On or about March 14, the plaintiff Kaur while she was visiting her native town in Punjab India, Kaur's was asked by the local police station to appear at the police station. For two consecutive days, Kaur was made to appear at 7:00 AM and was kept in the police station till 10:00 PM with orders to appear again the next morning. Throughout the 15 hours period at the police station, Kaur was not only under illegal detention whereby she could not leave at her will, she was intimidated, harassed and threatened with rape and extra judicial of her relatives. Kaur was told by the investigating officers that they thave orders from the very top (Chief Minister and Governor of the State) to round up, investigate and "straighten out" anyone having connection and link with "Khalistan Referendum Campaign". Kaur was categorically told that her son based in Houston, TX has been found supporting Khalistan Referendum Campaign on social media and in the public events in US and Canada. He must stop his support and activism for "Khalistan Referendum" or his family in India will pay the price. The plaintiff Kaur returned to the United States two (2) days ago.

14. This is a civil action for compensatory and punitive damages against Defendants for violations of state, federal, and international law committed against the Sikhs people in Punjab who support Khalsa Vaheer and/or Khalistan Referendum and their respective families.

## II. PARTIES

### A. Plaintiffs

**Individual Plaintiffs [Class Representative]**

15. The named Plaintiff SINGH, filing under assumed name due to fear of retaliation, is a Sikh male, a Lawful Permanent Resident of the United States originally hailing from the District Ludhiana, Punjab.

16. On or about March 12, 2023 when he plaintiff Singh was on a visit to India, the plaintiff was illegally detained during the Operations ordered by the Defendants. as part of widespread raids and round up of Sikhs throughout Punjab. Singh was illegally detained by the Punjab Police acting directly under the command of Defendant Yadav. The plaintiff Singh was illegally detained for 3 days, subjected to custodial torture in the form of beating, deprived of food and sleep, and threats of being extra judicially killed. The plaintiff Singh was repeatedly told by the custodial police officials that his arrest is according to the orders and policy of Punjab Chief Minister Mann and Governor Purohit under which any Sikh who supports Khalistan Referendum should be captured and "taught a lesson" and that Singh is being "straightened" because his US Citizen son living in Chiaco, IL with whom Singh lives in the US, actively supports "Khalistan Referendum" on the social media and on ground rallies/events in the United States. After securing his release from illegal detention, the plaintiff Singh returned to the United States 2 days ago.

17. The named Plaintiff KAUR, filing under assumed name due to fear of retaliation, is a Sikh female, Citizen of the United States originally hailing from the District Patiala, Punjab.

18. On or about March 14, the plaintiff Kaur while she was visiting her native town in Punjab India, Kaur's was asked by the local police station to appear at the police station. For two consecutive days, Kaur was made to appear at 7:00 AM and was kept in the police station till 10:00 PM with orders to appear again the next morning. Throughout the 15 hours period at the police station, Kaur was not only under illegal detention whereby she could not leave at her will, she was intimidated, harassed and threatened with rape and extra judicial  of her relatives. Kaur was told by the investigating officers that they have orders

from the very top (Chief Minister and Governor of the State) to round up, investigate and "straighten out" anyone having connection and link with "Khalistan Referendum Campaign". Kaur was categorically told that her son based in Houston, TX has been found supporting Khalistan Referendum Campaign on social media and in the public events in US and Canada. He must stop his support and activism for "Khalistan Referendum" or his family in India will pay the price. The plaintiff Kaur returned to the United States two (2) days ago.

19. The plaintiffs Singh and Kaur also represent the similarly situated Sikhs who are currently in detention or who were taken into detention, subjected to custodial torture and threats of extra judicial deaths during the operations ordered and executed by the Defendants.

**Organizational Plaintiffs [Civil Society/Class Representative]**

20. Plaintiff "Sikhs for Justice" (SFJ) is New York based human rights advocacy group.

21. The class members and their families suffered abuse on account of the democratic campaign Khalistan Referendum launched by the SFJ.

22. As a part of its "Siege of Punjab", and crackdown policy, the Defendants has been attempting to blocked the communication[14] of news and information with regard to abuse and maltreatment of protesting farmers to the outside world by shutting down internet[15].

Plaintiff SFJ believes in and adheres to UN Charter and works to promote the human rights as enshrined in Universal Declaration of Human Rights ("UDHR") and the International Covenant on Civil and Political Rights. SFJ is spearheading the peaceful and democratic campaign for holding non-governmental referendum on the question of establishing the region of Punjab currently governed by India as a sovereign country. The Referendum will give the Sikhs living anywhere in the world and indigenous people of

---

[14] https://www.cnn.com/2023/03/20/india/india-separatist-manhunt-internet-shutdown-intl-hnk/index.html

[15] https://www.cbc.ca/news/world/india-punjab-amritpal-singh-1.6785857

all faiths living in Punjab to express their will on the question of future association of Punjab with India.

The Voting in SFJ's non-governmental Punjab Independence Referendum started on October 31st from London, UK and is being monitored and tabulated by "Punjab Referendum Commission" www.punjabreferendumcommission.org a panel of non-aligned experts on direct democracy and secession.

## B. Defendants:

23. Defendant Bhagwant Mann is a national and citizen of India, Punjab Convener of Aam Admi Party (AAP) which is the ruling party of Punjab currently and Chief Minister of the State of Punjab.

24. As head of the ruling AAP party and Chief Minister of Punjab, the defendant Mann presided over, initiated, and condoned the horrors of the acts perpetrated against the Sikhs in Punjab who support socio-religious campaign Khalsa Vaheer and/or political opinion "Khalistan Referendum".

25. Defendant Banwarilal Purohit is a national and citizen of India and member of Bhartiya Janata Party (BJP), a Hindu supremacist party which believes in and works for turning India into a homogenous "Hindu Nation".

26. Defendant Purohit is also the Governor of the State of Punjab, India. Defendant Purohit presided over, initiated, and condoned the horrors of the acts perpetrated against the Sikhs in Punjab who support socio-religious campaign Khalsa Vaheer and/or political opinion "Khalistan Referendum".

27. Defendant Gaurav Yadav, is a member of Indian Police Service (IPS) and currently working as Director General of Police (DGP), Punjab. As a police officer, the defendant Yadav has a history and track record of committing human rights abuses with impunity. The defendant Yadav, commands the police force in Punjab which conducted the raids, illegal detentions and custodial tortures during the on "Siege of Punjab".

28. Defendants Mann, Purohit and Yadav share command and control responsibility for wrongs being committed against the Sikhs in Punjab who support Khalsa Vaheer and Khalistan Referendum campaigns.

29. Defendants Mann, Purohit and Yadav are liable in personal capacity as well as for sharing command and control responsibility for ordering torture on plaintiffs and class members.

**C. Class Allegations**

30. The class consists of all men, women, and children who are the victims of physical and mental torture and next of kin of those who suffered wrongful deaths at the hands of Indian officials who were acting under the orders and policies set by the defendant.

31. It is believed that so far several hundred Sikhs have suffered abuses suffered, however, the exact number of class members is unknown at this time

32. There are common questions of law and fact in this action that affect and relate to each member of the class, including:

    a. Whether the plaintiffs, individually and collectively, suffered an abuse which amounts to tortious liability and which was ordered, commanded or overseen by the defendant.

    b. Whether Defendants authorized, condoned, commanded, or directed the unlawful acts of the authorities and forces under his control;

    c. Whether Defendants actions give rise to liability under applicable international and domestic laws.

33. This action is properly maintained as a class action because a) Defendants have acted or failed to act in a way generally applicable to the class, making any declaratory relief awarded appropriate to the class as a whole, and b) questions of law and fact common to the class predominate over questions affecting individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## III. JURISDICTION AND VENUE

34. Defendant is liable for mental and physical torture and wrongful deaths, under actual and apparent authority and under color of law through the ordering and direction of his forces and authorities to use brutal force resulting in deaths and bodily injuries as defined by the customary international law, the Vienna Convention, and the Torture Victim Protections Act ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (1992).

35. Defendant are further liable for violations of customary international law and treaty law prohibiting the commission of human rights violations and war crimes. Accordingly, this Court has jurisdiction over this action based on 28 U.S.C. Section 1350 (Alien Tort Statute) and 28 U.S.C. Section 1331. The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367.

36. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. Sections 1391(b) (3).

37. The Defendants' actions with respect to ongoing farmers protest, fall within 10 year statute of limitation set by the Torture Victim Protection Act (TVPA).

## IV. STATEMENT OF FACTS

### A.  Key Events and Facts:

38. This action is brought in the wake of ongoing severe and violent "Siege of Punjab" in India where thousands of Sikh families have been illegally detained, subjected to custodial torture while the whole state of Punjab has been cut and isolated from the rest of the world with shut down of internet[16] to blackout the information about ongoing human rights abuses and to carry on the persecution[17] of the Sikh population with impunity on account of their subscription to socio-religious campaign - "Khalsa Vaheer" – run by the "Waris Punjab De" (WPD) under the leadership of Sikh preacher Amritpal Singh and for their support to the political opinion "Khalistan Referendum" being organized by the plaintiff Sikhs For Justice (SFJ) on the question "Should Indian Governed Punjab Be An Independent Country?".

39. The ongoing "Siege of Punjab" started about three weeks ago with Operation CASO (Cordon And Search Operations)[18] ordered by the defendant Bhagwant Mann, the Chief

---

[16] https://www.scmp.com/week-asia/politics/article/3214481/anger-mounts-among-sikh-diaspora-indian-police-cut-internet-search-fugitive-separatist-preacher

[17] https://time.com/6265630/india-amritpal-singh-sikh-punjab-khalistan/

[18] https://www.tribuneindia.com/news/patiala/police-campaign-to-nab-sfj-supporters-drug-peddlers-484764

Minister of Punjab and Banwarilal Purohit[19], Governor of Punjab and executed by the Defendant Gaurav Yadav, Director General of Police, against Khalistan Referendum in Punjab under which homes of thousands of Khalistan Referendum campaigners have been raided, hundreds have been illegally detained, subjected to custodial tortures, their mobile phones confiscated and threats of rape, violence and death given to their family members. The launch of CASO against SFJ and Khalistan Referendum is verified by the police officials as reported in Tribune India, dated March 02, 2023, saying:

> *"Acting on a tip-off, the district police today conducted a cordon and search operation to nab sympathisers of the Sikh For Justice (SFJ) of Gurpatwant Singh Pannu at Jassran village adjoining the industrial town of Mandi Gobindgarh. The police searched the houses of two erstwhile supporters of the SFJ. Nothing incriminating was found.*
>
> *While addressing the media, Amloh DSP Jangeet Singh said the Punjab Police launched a CASO (cordon and search operation) campaign to nab anti-nationals, drug peddlers, gangsters and criminals. The campaign also aims at making the state drug-free. He said through the campaign, thorough search operations were conducted at suspicious places"*.[20]

40. Khalistan Referendum[21] is the campaign of SFJ under which first ever global unofficial referendum is being organized among the Sikh living outside India and people of all faiths living in Punjab on the question of secession of Punjab from India and

---

[19] Defendant Purohit, the Governor of Punjab, asking the state police to crush the movement for Khalistan and supporters of Khalistan Referendum. https://www.hindustantimes.com/cities/chandigarh-news/thwart-efforts-to-revive-khalistan-movement-in-punjab-guv-to-cops-101675362297995-amp.html

[20] https://www.tribuneindia.com/news/patiala/police-campaign-to-nab-sfj-supporters-drug-peddlers-484764

[21] https://www.independent.co.uk/asia/india/canada-khalistan-referendum-india-sikhs-b2173723.html

establishment of a sovereign country Khalistan. Since June Indian Army's Operation Bluestar against the Golden Temple in June 1984, the aspiration for liberation of Punjab from India has become central and existential among the Sikh people globally, popularly known as Khalistan movement[22]. The movement which during the 80s and 90s was violently crushed by the Indian government by extra judicially more than 150,000 Sikhs with complete impunity, has now morphed into and taken the shape of "Khalistan Referendum" an unofficial voting being conducted under the supervision of a panel of international experts on elections and democracy – The Punjab Referendum Commission – www.PunajbReferendumCommission.org to ensure the transparency and compliance with international standards.

41. For the last 10 days[23], a fresh wave of violence has been ordered by the defendants Mann and Purohit and executed by Defendant Yadav against the supporters and sympathizers of socio-religious campaign Khalsa Vaheer. Their home were raided, scores illegally detained and tortured, while the blackout on the flow of information further tightened.

42. Khalisa Vaheer is a socio-religious campaign of WPD under which Sikh preacher Amritpal Singh[24] spreads the teachings of Sikhism with special emphasis on the evils of drug use. For over a decade drug addiction has become a concerning endemic in Punjab and hence Khalsa Vaheer's message became quickly popular.

43. Colonial era draconian laws of sedition, National Security Act (NSA)[25] and Unlawful Activities (Prevention) Act (UAPA) all of which authorize arbitrary arrests and detention, are being widely used to suppress the supporters of Khalsa Vaheer and Khalistan Referendum campaigns[26].

---

[22] https://amp.cnn.com/cnn/2023/03/22/india/india-separatist-khalistan-movement-explainer-intl-hnk/index.html

[23] https://www.punjabnewsexpress.com/punjab/news/punjab-police-launch-crackdown-against-elements-of-waris-punjab-de-amritpal-singh-absconding-203307

[24] https://www.abc.net.au/news/2023-03-24/amritpal-singh-on-the-run-from-indian-authorities/102123216

[25] https://www.thehindu.com/news/national/other-states/amritpal-case-police-says-197-released-so-far-7-detained-under-nsa/article66664927.ece

[26] https://indianexpress.com/article/cities/chandigarh/amritpal-singh-aides-detained-nsa-social-media-influencer-furniture-store-owner-8509089/

44. Punjab with a population of over 27 million majority of whom are Sikhs, is being rounded and hounded on the orders of and by the forces controlled and commanded by the defendants to persecute the named plaintiffs, the class members, and the general Sikh population of Punjab on account of supporting socio-religious campaign "Khalsa Vaheer" and subscribing to the political opinion "Khalistan Referendum".

45. From the actions and policies of the defendants, it becomes abundantly clear that the real intent and motive behind the "Siege of Punjab" and taking the Sikh population as "hostage" is to punish and penalize the people of Punjab for supporting and subscribing to the socio-political campaign Khalsa Vaheer and political opinion Khalistan and its democratic expression "Khalistan Referendum".

46. The Plaintiffs are those who either personally suffered or had immediate family members suffered detention, torture and death threats as a result of the "Siege of Punjab" ordered and executed by the Defendants.

47. The named Plaintiff SINGH, filing under assumed name due to fear of retaliation, is a Sikh male, a Lawful Permanent Resident of the United States originally hailing from the District Ludhiana, Punjab.

48. On or about March 12, 2023 when he plaintiff Singh was on a visit to India, the plaintiff was illegally detained during the Operations ordered by the Defendants. as part of widespread raids and round up of Sikhs throughout Punjab. Singh was illegally detained by the Punjab Police acting directly under the command of Defendant Yadav. The plaintiff Singh was illegally detained for 3 days, subjected to custodial torture in the form of beating, deprived of food and sleep, and threats of being extra judicially killed. The plaintiff Singh was repeatedly told by the custodial police officials that his arrest is according to the orders and policy of Punjab Chief Minister Mann and Governor Purohit under which any Sikh who supports Khalistan Referendum should be captured and "taught a lesson" and that Singh is being "straightened" because his US Citizen son living in Chiaco, IL with whom Singh lives in the US, actively supports "Khalistan Referendum" on the social media and on ground rallies/events in the United States. After securing his release from illegal detention, the plaintiff Singh returned to the United States 2 days ago.

49. The named Plaintiff KAUR, filing under assumed name due to fear of retaliation, is a Sikh female, Citizen of the United States originally hailing from the District Patiala, Punjab.

50. On or about March 14, the plaintiff Kaur while she was visiting her native town in Punjab India, Kaur's was asked by the local police station to appear at the police station. For two consecutive days, Kaur was made to appear at 7:00 AM and was kept in the police station till 10:00 PM with orders to appear again the next morning. Throughout the 15 hours period at the police station, Kaur was not only under illegal detention whereby she could not leave at her will, she was intimidated, harassed and threatened with rape and extra judicial of her relatives. Kaur was told by the investigating officers that they thave orders from the very top (Chief Minister and Governor of the State) to round up, investigate and "straighten out" anyone having connection and link with "Khalistan Referendum Campaign". Kaur was categorically told that her son based in Houston, TX has been found supporting Khalistan Referendum Campaign on social media and in the public events in US and Canada. He must stop his support and activism for "Khalistan Referendum" or his family in India will pay the price. The plaintiff Kaur returned to the United States two (2) days ago.

## B.  Defendants' Specific Culpable Actions:

51. The Defendants acting jointly and severally undertook the following actions as part of as well as separate from Operation COSA which caused torture and inflicted injury upon named plaintiffs and class members – the pro Khalistan and pro Khals Vaheer Sikhs. During this time, Punjab Police acting on the orders of the defendants have committed the following tortuous acts against the plaintiffs, individually and collectively:

  a)  Illegal Detention/Arrest

  b)  Filing of false criminal charges (FIR)

  c)  Filing of Sedition Charges for participating or associating with socio-religious campaign Khalsa Vaheer and political campaign Khalistan Referendum

  d)  Torture in Police custody

  e)  Police Raid at home or work Interrogation/Questioning

  f)  Threat of Rape/Sexual violence

g)      Threat of Extra Judicial

## C. Defendants' participation

52. Defendant Mann is the Convenor of AAP Party and Chief Minister of the State of Punjab since March 2022.

53. Defendant Purohit has been a life long member of BJP and has been Governor of Punjab since August 31, 2021.

54. Defendant Gaurav Yadav is a career police officer belong to Indian Police Service and working as DGP of Punjab since July 2022.

55. Defendants in their personal as well as official capacity are directly and personally liable for the suffering of the named plaintiffs and the class members.

## D. Inadequacy of local remedies

56. The plaintiffs and the class will not receive any remedy from within Indian system.

57. Defendants have remained and continue to remain beyond the reach of law in India.

58. India has a consistent policy, practice and pattern of impunity. India's record on human rights is marred with torture and human rights violations which go unpunished and unprosecuted for decades despite abundance of implicating evidence. November 1984 genocidal violence against of Sikhs throughout India in the aftermath of Indira Gandhi's assassination and 2002 massacre of Muslims in Gujarat committed with the complicity of current Prime Minister Modi are just few of many such glaring examples of impunity. While the civilized nations like USA, Canada, UK and many European countries revoked Defendants' Modi's visa due to his complicity in massacre of Muslims, Indian system and so-called democracy rewarded the mass murderers like Modi with the premiership of the country, second time in a row.

59. From the above, it becomes clear that there can be no justice in a country where the government covers up the acts and omissions of a man responsible for the deaths and injuries of thousands persecuted solely because of their religious beliefs. There is no remedy in India. Jurisdiction is proper in this forum and this court must allow for this case to proceed accordingly.

## V.  CLAIMS FOR RELIEF

60. Plaintiffs' causes of action arise under and violate both domestic law and international law as defined in agreements, declarations, conventions, resolutions, and treaties, including but not limited to the following:

    a.  Customary international law and treaties of the United States;

    b.  Statutes and common law of the United States;

    c.  Statutes and common law of Texas;

    d.  Any other applicable laws, domestic, foreign or international.

61. The claims herein under the law of nations are based on norms that are definable, obligatory, and universally recognized.

62. The law of nations prohibits the targeting of civilians and the blatant discrimination based on targeting members of a specific religious group.

63. The law of nations prohibits acts or threats of violence against a specific group of people targeted because of their religious beliefs.

64. Based on the foregoing, Defendants are guilty of Crimes against Humanity, Cruel, Inhuman, or Degrading Treatment or Punishment, Extrajudicial , Wrongful Death, Negligence, Battery, and Intentional and Negligent Infliction of emotional Distress.

65. The testimony of Plaintiffs and other witnesses will show that Defendants have taken actions with respect to Sikhs who support Khalsa Vaheer and/or Khalistan Referendum which directly caused and resulted in bodily injury, harm, mental distress to the plaintiffs and class members.

66. Plaintiffs "Singh" and "Kaur" have requested that their identities be withheld at this stage of the proceedings, fearing retaliation and harm to their family members living in Punjab, India at the hands of defendants and their agents.

67. The United States courts have held that in recognizing the right to a public trial of the Defendant, such considerations "must be balanced against other interests that might justify closing the courtroom to the public, including preservation of order, protection of parties or witnesses, or maintenance of the confidentiality of certain information."[27]

### General Allegations

68. The acts described in the Complaint were undertaken under color of law.

---

[27] *See United States v. Lloyd*, 520 F.2d 1272, 1274 (2d Cir. 1975).

69. The acts and injuries to Plaintiffs and their deceased and injured relatives described herein, as well as those similarly situated, were part of a pattern and practice of systematic human rights violations designed, ordered, implemented, and directed with the participation of Defendants and carried out by local law enforcement and military authorities and personnel acting at their direction, and/or with their encouragement and acquiescence.

### FIRST CLAIM FOR RELIEF
### (Crimes against Humanity)

70. Plaintiffs re-allege and incorporate by reference all the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

71. The abuses committed against Plaintiffs and their deceased loved ones constitute crimes against humanity. Defendants knew or should have known that the direction given to the local law enforcement and military personnel under their command and direction would have resulted in the death and torture of protesting farmers.

72. As a result, Defendants are responsible for the wrongful death (murder) of the next of kins of plaintiffs or class members and these murders were knowingly committed as part of a widespread or systemic suppression of farmers' protest.

73. Defendants, by virtue of his inhuman acts and omissions, also caused great suffering and/or serious injury to body or to mental or physical health in the context of a widespread or systemic attack against a specific population.

74. Defendants' acts and omissions constitute "tort[s]… committed in violation of the law of nations or a treaty of the United States" under 28 U.S.C. Section 1350 and also violate 28 U.S.C. Section 1331 in that the acts and omissions against Plaintiffs violated customary international law prohibiting war crimes as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

75. The acts and omissions constituting crimes against humanity caused Plaintiffs to suffer damages, including physical and mental pain and suffering, in amounts to be determined by a jury at trial.

76. Defendants' acts and omissions were deliberate, willful, wanton, malicious, intentional, and/or oppressive, and should be punished by an award of punitive damages in an amount to be determined by a jury at trial.

## SECOND CLAIM FOR RELIEF
### (Cruel, Inhuman, or Degrading Treatment or Punishment)

77. Plaintiffs re-allege and incorporate by reference all the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

78. The abuses committed against Plaintiffs and deceased next of kin described herein each constitute cruel, inhuman, or degrading treatment or punishment.

79. These acts include, as alleged in this Complaint also constitute torts committed in violation of the law of nations, and thus of the United States, as reflected in federal common law, which incorporates extrajudicial, pursuant to 28 U.S.C. Sections 1331 and 1350.

80. Defendants' conduct constitutes a violation of the law of nations and customary international law prohibiting torture, cruel, inhuman, or degrading treatment or punishment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions and other authorities. Extrajudicial is similarly reflected, expressed, defined, and codified in multilateral treaties and other international instruments, international and domestic judicial decisions and other authorities. Therefore, such acts and omissions are actionable.

81. The acts and omissions constituting cruel, inhuman, or degrading treatment or punishment caused Plaintiffs to suffer damages, including physical and mental pain and suffering, in amounts to be determined by a jury at trial.

82. Defendants' acts and omissions were deliberate, willful, wanton, malicious, intentional, and/or oppressive, and should be punished by an award of punitive damages in an amount to be determined by a jury at trial.

## FIFTH CLAIM FOR RELIEF
### (Negligence)

83. Plaintiffs re-allege and incorporate by reference all the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

84. Defendants owed a duty to Plaintiffs and their decedents to prevent the deliberate, willful, wanton, malicious, intentional, and/or oppressive torture, and assaults on the plaintiffs.

Further Defendant owed a duty to Plaintiffs and their decedents to refrain from intentional and wantonly harmful outrageous conduct.

85. Defendants breached that duty by authorizing the military and police forces under his command and direction to engage in the deliberate, willful, wanton, malicious, intentional, and/or oppressive torture and assaults on the plaintiffs.

86. As a direct and proximate cause of Defendants' acts and omissions constituting breach of that duty, Plaintiffs and their decedents were harmed. It was reasonably foreseeable that such breach would result in this harm.

87. Beyond mere negligence, Defendants' acts were intentional, deliberate, willful, wanton, malicious, and/or oppressive torture, and assaults on the plaintiffs and should be punished by an award of punitive damages in addition to compensatory damages, in respective amounts to be determined by a jury at trial.

## SIXTH CLAIM FOR RELIEF
### (Public Nuisance)

88. Plaintiffs re-allege and incorporate by reference all the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

89. Plaintiffs as members of the public, had a right to health, public peace, public comfort, and/or public convenience.

90. Defendant deliberately and unreasonably interfered with the aforementioned rights by authorizing, commanding, and directing the attack of intentional, deliberate, willful, wanton, malicious, and/or oppressive torture, s, and assaults by the police and military forces under their command and direction specifically targeted against plaintiffs.

91. The clamp down arranged and directed as well as encouraged, condoned, and acquiesced in by Defendant caused substantial personal and property damage and endangered the comfort, repose, health and/or safety of Plaintiffs, their decedents, and thereby constitute a public nuisance.

92. The public nuisance created by Defendants directly caused special injuries and damages to Plaintiffs and their decedents, unique from those suffered by the general public. Said public nuisance interfered with, obstructed, and or injured the individual rights of Plaintiffs and their decedents.

93.  Defendants' acts and omissions were intentional, deliberate, willful, wanton, malicious, and/or oppressive torture and assaults on the plaintiffs.

94.  Defendants' acts were intentional, deliberate, willful, wanton, malicious, and/or oppressive torture, and assaults on the plaintiffs constituting a public nuisance, and should be punished by an award of punitive damages in addition to compensatory damages, in respective amounts to be determined by a jury at trial.

## SEVENTH CLAIM FOR RELIEF
### (Battery)

95.  Plaintiffs re-allege and incorporate by reference all the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

96.  Defendant by engaging in the intentional, deliberate, willful, wanton, malicious, and/or oppressive torture, s, and assaults on the plaintiffs also brought about harmful and/or offensive contact with the persons and bodies of Plaintiffs and their decedents.

97.  As a direct and proximate cause of Defendants' conduct, Plaintiffs and their decedents were harmed and such harm was the reasonably foreseeable consequence of the contact.

98.   Defendants' acts and omissions caused Plaintiffs and their decedents to suffer damages, severe physical and mental pain and suffering, in amounts to be determined by a jury at trial.

99.  Defendants' acts were intentional, deliberate, willful, wanton, malicious, and/or oppressive torture, s, and assaults on the plaintiffs constituting battery, and should be punished by an award of punitive damages in addition to compensatory damages, in respective amounts to be determined by a jury at trial.

## NINTH CLAIM FOR RELIEF
### (Negligent Infliction of Emotional Distress)

100. Plaintiffs re-allege and incorporate by reference all the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

101. Defendant owed a duty to Plaintiffs and their decedents to prevent the deliberate, willful, wanton, malicious, intentional, and/or oppressive torture, s, and assaults on the on the plaintiffs. Further Defendants owed a duty to Plaintiffs and their decedents to refrain from intentional and wantonly harmful outrageous conduct.

102. Defendant breached that duty by authorizing, commanding, and directing the military and police forces under his command and direction to engage in the deliberate, willful, wanton, malicious, intentional, and/or oppressive torture, s, and assaults on the on the plaintiffs. Defendants violated this duty and created an unreasonable and foreseeable risk of substantial bodily harm or death to the Plaintiffs and their decedents. The attacks placed the Plaintiffs and their decedents in grave danger and/or made them reasonably fear for their physical safety. During the attacks that Defendants planned, authorized, and directed, as well as condoned and acquiesced in, the surviving Plaintiffs all feared for their lives and experienced great trauma and shock.

103. Plaintiffs have suffered and will continue to suffer extreme mental anguish and emotional distress that was directly caused by the trauma, shock, and fear that they experienced during and directly after the attacks orchestrated by Defendant.

104. Moreover, Defendants' conduct caused many of the Plaintiffs to witness members of their immediate families suffer violent deaths or grave physical injury during the attacks. Defendants' conduct was a substantial factor in bringing about the injuries and deaths to which Plaintiffs bore witness.

105. Many Plaintiffs suffered and continue to suffer emotional torment caused by directly witnessing the violent death or serious physical injury of relatives during the attacks authorized, commanded, and directed as well as condoned and acquiesced in by Defendant.

106. When Defendants authorized, commanded, and directed as well as condoned and acquiesced in the attacks, he carelessly and negligently ignored the obvious risk of causing the Plaintiff's this trauma, shock, fear, and several emotional mental suffering. Defendants' disregard for the substantial risk of causing this trauma, suffering, and fear, was so extreme and degree as to go beyond all possible bounds of decency, and are utterly intolerable in a civilized society.

107. Defendants' acts were negligent infliction of emotional distress in the torture, s, and assaults on the plaintiffs , and should be punished by an award of punitive damages in addition to compensatory damages, in respective amounts to be determined by a jury at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pay for judgment against Defendant as follows:

a.  For compensatory damages in an amount to be proven at trial;

b.  For punitive and exemplary damages in an amount of USD 100,000 per injured/tortured.

c.  For reasonable attorneys' fees and costs of suit;

d.  For such, other, further, or different relief as this honorable Court may deem to be just, proper, fitting, and equitable.

A jury trial is demanded on all issues.

Submitted on: March 27, 2023.

Sikhs For Justice
Through its coordinator Jagreet Singh
7520 Astoria Blvd, Suite !70
East Elmhurst, NY 11370
support@sikhsforjustice.org

Singh
Plaintiff pro se
c/o Sikhs For Justice
7520 Astoria Blvd, Suite !70
East Elmhurst, NY 11370
support@sikhsforjustice.org

Kaur
Plaintiff Pro Se
c/o Sikhs For Justice
7520 Astoria Blvd, Suite !70
East Elmhurst, NY 11370
support@sikhsforjustice.org